## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GERMANIA HERNANDEZ

      Plaintiffs,

v.                                             Case No. 8:22-cv-1632-JSM-TGW

MAXIMO ANDUJAR and
ANDUJAR MUSIC GROUP, LLC
      Defendants.

_____/

### REPORT AND RECOMMENDATION

      The plaintiff alleges that the defendants fraudulently represented that they would book singing artist Antony Santos to perform on a United States concert tour produced by the plaintiff, which induced the plaintiff to give the defendants over $200,000.00.   Neither defendant appeared in the case, and the Clerk entered default against them.

      The undisputed complaint allegations and evidence establish that the defendants are liable for fraud and civil theft.   Furthermore, the uncontroverted evidence establishes that the plaintiff is entitled to damages of $647,606.41.  I therefore recommend that the Plaintiff's Amended Motion Requesting Default Judgment (Doc. 21) be granted, and default judgment be entered in favor of the plaintiff and against the defendants in the amount of $647,606.41.

I.

A. Plaintiff Germania Hernandez is a business owner and investor in music concert productions (Doc. 1, ¶1).[1]  She resides in Maryland. Defendant Maximo Andjuar is an artist booking agent who resides in Florida (id., ¶2).  Andujar is the president of defendant Andujar Music Group LLC, a New Jersey limited liability company (id., ¶¶2, 3).

The plaintiff's nephew, Narciso Jose Montas, introduced the plaintiff to Andujar.  Montas testified that he has been a concert event organizer for many years, and that he and Andujar previously worked together.  Andujar told Montas that he was the agent for Antony Santos, a popular Dominican Republic singing artist.  Andujar stated that he could book Santos to perform at concerts in the United States.  Montas mentioned the opportunity to Hernandez, who could fund the concerts.

In May 2019, Hernandez entered into an agreement with Andujar and his company whereby Andujar would arrange for Santos's performances at ten concerts in the United States during September 2019 (Doc. 1, ¶¶7, 8, 9; Doc. 1-2).  Hernandez agreed to pay Andujar $550,000.00, and she would receive the profits from the concerts (Doc. 1, ¶9; Doc. 21-5,

---

[1] This factual summary is based on the complaint allegations and exhibits, hearing testimony, and documentary evidence admitted at the hearing.

2

¶2).

Montas stated that this was a good opportunity because Santos's previous concerts in the United States sold out. Furthermore, Montas added, it had been several years since Santos performed in the United States, so Montas expected that these concerts would sell out as well. Hernandez stated that she expected profits from the concert tour between $680,000 to $960,000, and Montas estimated profits of $600,000 to $700,000.

In May and June 2019, Hernandez forwarded to Andujar funds totaling $223,517.97 (see Doc. 42, Pl. Exs. B, E-J). In July 2019, Hernandez booked three venues in anticipation of Santos's shows (Doc. 1, ¶12). However, Andujar, despite multiple requests, failed to deliver the documentation necessary to confirm the venues, including the artist's technical rider (id., ¶¶11, 13; Doc. 21-5, ¶¶5-6). Andujar repeatedly attributed the delays to Santos's management team, and never delivered the documents (Doc. 1, ¶¶15, 18; Doc. 21-5, ¶7; see Doc. 17-2). Consequently, the venues and concert tour had to be cancelled.

After the tour dates expired without Andujar fulfilling his obligations, Hernandez demanded the return of her money (Doc. 1, ¶19; Doc. 21-5, ¶8). Andujar responded that he was trying to locate the person who works in Santos's office to return her money, and then represented that a

3

member of Santos's management team resigned and stole the money (Doc. 1, ¶¶21-22; Doc. 21-5, ¶¶8, 9). Andujar subsequently "disappeared" (Doc. 1, ¶25).

The plaintiff then attempted to recover her deposit directly from Santos. However, Santos's management team stated that Andujar "ha[d] never worked with" Santos, Andujar was not authorized to act on behalf of Santos, and that Santos did not have any shows booked in the United States for September 2019 (Doc. 1, ¶¶26, 27; Doc. 21-5, ¶¶11,12).

In July 2022, the plaintiff filed in this court a six-count complaint based on diversity jurisdiction, alleging breach of contract, fraud, "contractual damages," "torts," unjust enrichment, and civil theft under Fla. Stat. §772.11 (Doc. 1, pp. 7-12). The plaintiff requested compensatory damages, special damages in the form of lost profits, and "moral damages" (id., ¶¶36, 43, 56, 60).

The defendants were served with the summons and complaint (see Docs. 7-8). Neither responded to the complaint as required by Rule 12, F.R.Civ.P. (see Doc. 9). Consequently, the plaintiff requested, and the Clerk entered, defaults against the defendants (Docs. 9-11).

The plaintiff then filed a Motion Requesting Default Judgment, which was referred to me (Docs. 17, 18). The plaintiff subsequently filed,

4

at the court's direction, an Amended Motion Requesting Default Judgment to cure several deficiencies in the motion (Docs. 19, 21).

Due to additional deficiencies, the plaintiff was directed to file supplemental memoranda regarding the court's jurisdiction and her damages (see Docs. 23, 32, 33, 37, 43). At that time, the plaintiff abandoned the breach of contract claim because the contract contained New Jersey venue and choice of law clauses (Doc. 37, p. 4; see Doc. 1-2, p. 5, ¶14).

In support of the plaintiff's Amended Motion Requesting Default Judgment, the plaintiff submitted a declaration and text messages between her and Andujar (Docs. 21-5; 21-6). I also held an evidentiary hearing to establish the amount of damages, at which the plaintiff proffered several exhibits that I admitted into evidence (Doc. 42, Pl. Ex. A-J).[2]

At the hearing, Hernandez and Montas testified to the circumstances underlying the alleged fraud and attested that Hernandez sustained $223,517.97 in out-of-pocket damages. Finance expert Javier Baella, Ph.D, CPA, also testified. He opined that the plaintiff's expectations damages are $647,606.41, plus interest (Doc. 43-2). Dr. Baella explained that this damages calculation is based on Hernandez's anticipated profits if

---

[2] It is noted that there were several extensions of time in this matter due to plaintiff's counsel's unfortunate health circumstances.

the defendants had fulfilled their part of the agreement and the concerts occurred as planned (id., p. 5, ¶15).

      B.   At the hearing, I asked the plaintiff to clarify the claim(s) under which she is seeking damages because she abandoned her breach of contract claim (Doc. 37, p. 4).  The plaintiff stated that she is proceeding on her fraud and civil theft claims (see also Doc. 43).  Since the expert's opinion is premised upon a breach of contract claim, I directed the plaintiff to submit a second supplemental memorandum showing that the same damages are recoverable under those claims.

      Additionally, the plaintiff confirmed at the hearing that she no longer seeks emotional distress damages, conceding that there is no legal basis for those damages (see also Doc. 37, p. 2).  Finally, I note that, although the complaint contains a request for punitive damages, the plaintiff did not mention such a request in her supplemental damages memoranda or at the hearing.

## II.

      A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear under Rule 55(b)(2), F.R.Civ.P.  DirecTV, Inc. v. Griffin, 290 F.Supp. 2d 1340, 1343 (M.D. Fla. 2003).  By defaulting, the defendant is deemed to have admitted

the plaintiff's well-pleaded allegations of fact for purposes of liability. Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987). On the other hand, "[t]he defendant is not held to admit facts that are not well pleaded or to admit conclusions of law. In short ... a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Nishimatsu Const. Co. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). Additionally, before entry of a default judgment, the court must ensure that it has jurisdiction over the parties. Lane v. DBI Servs., LLC, No. 6:22-cv-41; 2022 WL 17416689 at *2 (M.D. Fla. Aug. 5, 2022).

## III.

As indicated, the plaintiff seeks entry of default judgment against the defendants for fraud and civil theft under Fla. Stat. §772.11.[3] The complaint allegations and exhibits, testimony of hearing witnesses, and

---

[3] The plaintiff filed this diversity action in the Middle District of Florida. Consequently, Florida's conflict-of-laws rules determine the applicable state law. Judge v. Am. Motors Corp., 908 F.2d 1565, 1567 (11th Cir. 1990). Florida applies the "significant relationships test" in the Restatement (Second) of Conflicts of Law. Id.; see Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980). The plaintiff asserts that this lawsuit has a significant relationship with Florida because Andujar resides in Florida, he sent the agreement containing the fraudulent statements from Florida, and Florida is the plaintiff's choice of forum. The plaintiff's unchallenged allegations show that there is a significant relationship with Florida. In all events, if Maryland is the appropriate choice of law because the plaintiff was injured in Maryland, the elements of a Maryland fraud claim and available types of damages are the same. See Nails v. S&R Inc., 639 A.2d 660, 668 (1994); Levy-Yurista v. Finger, 2023 WL 4837555 at *1 (Md. Ct. Spec. App. July 28, 2023); Hinkle v. Rockville Motor Co., , 278 A.2d 42, 47 (1971).

evidence admitted at the hearing establish that the defendants violated both laws.

A. As an initial matter, the plaintiff's allegations establish personal jurisdiction. Specifically, the plaintiff alleges that Andujar is a Florida resident who is registered to conduct business in Florida (Doc. 1, ¶¶6, 29). Therefore, there is clearly personal jurisdiction over Andujar.

The corporate defendant is registered in New Jersey. Personal jurisdiction over a nonresident defendant requires that the forum state's long-arm statute reach the defendant and that the defendant have sufficient contacts with the forum state such that exercising jurisdiction would not offend due process. United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009); Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1350 (11th Cir. 2013).

The plaintiff alleges that the corporate defendant committed the alleged fraud through its president and agent, a Florida resident, who sent from Florida the agreement containing the fraudulent representations underlying this lawsuit. These unchallenged allegations satisfy Fla. Stat. §48.193(1)(a) of the Florida Long Arm Statute and show that exercising jurisdiction over the corporate defendant does not violate the Due Process Clause.

8

B. To establish a claim of fraud under Florida law, a plaintiff must establish that: (1) the defendant made a false statement concerning a material fact; (2) the defendant knew or should have known that the representation was false; (3) the defendant intended to induce another party to act in reliance on the false statement; and (4) the plaintiff acted in justifiable reliance on the representation and was injured as a result.[4] <u>Global Quest, LLC v. Horizon Yachts, Inc.</u>, 849 F.3d 1022, 1029–30 (11th Cir. 2017), citing <u>Butler v. Yusem</u>, 44 So.3d 102, 105 (Fla. 2010). Although an alleged false statement in a fraud action is typically about a past or existing fact, there are exceptions to this rule. Specifically,

> Where the person expressing the opinion is one having superior knowledge of the subject of the statement and the plaintiff can show that said person knew or should have known from facts in his or her possession that the statement was false, then the opinion may be treated as a statement of fact .... Additionally, if the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform, such a promise may also constitute a fraudulent misrepresentation.

---

[4] The plaintiff alleges a claim of fraud in her complaint (Doc. 1). However, in her filings, she repeatedly refers to fraud in the inducement because the agreement was memorialized in a contract. The elements of the claims are the same. However, because the plaintiff abandoned her breach of contract claim, it is appropriate to refer to this claim as fraud to avoid confusion.

Mejia v. Jurich, 781 So. 2d 1175, 1177 (Fla. App. 2001) (citations omitted).

Moreover, "the elements of fraud—particularly including intent and knowledge—may be, and often are, proven by circumstantial evidence." Global Quest, LLC v. Horizon Yachts, Inc., supra, 849 F.3d at 1030.

Hernandez established that Andujar falsely represented that he would book Santos to perform on a ten-concert United States tour produced by Hernandez, when Andujar had no intention, nor capability, to fulfill that promise. Specifically, the plaintiff alleges that (1) Andujar never had authorization to act on Santos's behalf, (2) Andujar was neither Santos's agent nor a member of Santos's management team, and (3) no shows were booked on Santos's calendar for September 2019. Most significantly, the plaintiff states that she learned Andujar "ha[d] never worked with" Santos (Doc. 21-5, ¶11).

Andujar's conduct after he received the plaintiff's money underscores that the agreement was a ruse. Thus, in light of the undisputed allegation that Andujar "ha[d] never worked with" Santos, Andujar's excuses that Santos's office was to blame for failing to confirm Santos's performances and that a member of Santos's management team stole the plaintiff's money were blatant lies to perpetuate the fraud.

Moreover, the plaintiff clearly relied on Andujar's false

representations to her detriment, as Andujar's promises to arrange Santos's performances at these concerts induced Hernandez to give Andujar more than two hundred thousand dollars, for which she received nothing in return.[5]

Finally, Hernandez presented evidence that she justifiably relied on Santos's representations. In this respect, Montas testified that he has organized hundreds of concerts, and that he successfully worked with Andujar before. Consequently, there was no apparent reason to question Andujar's representations. Furthermore, although Hernandez did not have direct contact with Santos when executing their agreement, Montas stated that this was not unusual, as the agent typically does the artist's bookings.

In sum, the plaintiff established the elements of a fraud claim. Accordingly, the plaintiff is entitled to default judgment against the defendants on this claim.

C. The plaintiff also seeks default judgment on her civil theft claim. As the Eleventh Circuit discussed in Almeida v. Amazon.com, Inc., 456 F.3d 1316, 1326-27 (11th Cir. 2006):

> To maintain a cause of action under [Florida's] civil theft statute, [the plaintiff] must show by

---

[5] The plaintiff submitted a contradictory declaration that she paid Andujar $300,000.00, of which he returned $60,000 (Doc. 21-5. ¶10). However, the plaintiff subsequently presented evidence that she transferred to Andujar the equivalent of $223,517.97 in U.S. dollars (Doc. 43-2). In all events, the plaintiff's damages are based on her expected lost profits, not out-of-pocket damages (see infra, pp. 14-16).

"clear and convincing evidence" an injury caused by the defendant's violation of one or more of the provisions of the criminal theft laws found in Fla. Stat. §§ 812.012–037 ....

The Florida theft statute provides:

(1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit from the property.
(b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Fla. Stat. § 812.014(1). The plaintiff's well-pled allegations and evidence show that Andujar obtained the plaintiff's money under a ruse, with the intent to permanently deprive Hernandez of these funds or any benefit therefrom. These allegations establish a civil theft claim. See id.

IV.

The plaintiff requests damages of $647,606.41, plus pre-judgment interest (Doc. 43, Pl. Exs. A, B).

"[A]llegations relating to the amount of damages are not admitted by virtue of default." Miller v. Paradise of Port Richey, Inc., supra, 75 F.Supp.2d at 1346. Rather, the court is obligated to assure that there is a legitimate basis for any damage award it enters. Anheuser Busch, Inc. v.

12

Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003).   Thus, the award must be reasonable and not speculative.  See id.

The plaintiff presented in support of her damages expert testimony and an expert report from Javier Baella, Ph.D, CPA (Doc. 42, Pl. Exs. A, B).  Dr. Baella, who has been a professor of Finance at the University of Puerto Rico for 30 years, has a doctorate degree in Finance and has been a certified public account for 25 years (Pl. Ex. A, p. 2).  Dr. Baella has also appeared as an expert in local and federal courts (id.).   Dr. Baella's curriculum vitae shows that he is qualified to give an expert opinion on the plaintiff's damages.  Furthermore, Dr. Baella's testimony at the hearing was credible; he gave straightforward answers and his reasonable expert rate of $150.00 per hour underscores that he was not merely a "hired gun."

A.  Dr. Baella states that the plaintiff sustained out-of-pocket losses totaling $223,517.97 (id., p. 4).  Dr. Baella bases this opinion on his review of customer receipts showing that the plaintiff made to Andujar five deposits via bank transfers in May 2019 and June 2019 (see id.; Pl. Exs. E-J).[6]

Dr. Baella opines further that, using an expectations damages methodology, the plaintiff sustained damages of $647,606.41 (see Pl. Exs.

_____

[6] This sum includes one deposit requiring a conversion of Dominican pesos.

13

A, B).  Dr. Baella explains:

> …. "[T]he Expectations Damages doctrine [is] a
> theoretical framework that aims to put the claimant
> (PLAINTIFF), as possible through monetary
> compensation, in the position [she] would have
> been had the DEFENDANT complied with its
> responsibilities under the [agreement].    These
> damages can be computed by comparing the
> financial position the PLAINTIFF would have
> been" if the defendant fulfilled his obligations
> "versus the financial position the PLAINTIFF did
> effectively end in"

(Pl. Ex. B, p. 2) (emphasis in original).

Dr. Baella's "expectations damages doctrine" is known in the applicable caselaw as "benefit of the bargain" damages.  A defrauded plaintiff is permitted under Florida law to recover  "benefit of the bargain" damages.  Gregg v. U.S. Industries, Inc., 887 F.2d 1462, 1466 (11th Cir. 1989).   Thus, under Florida's "flexibility theory" for fraud actions, the plaintiff may recover either her out-of-pocket loss or the loss of the benefit of her bargain, as "justice requires to best compensate h[er] for the defendant's wrong."   Id.; see also Thomas v. Generac Power Systems, Inc., No. 21-12997, 2022 WL 4091735 at *3 (11th Cir. Sept. 7, 2022).

Dr. Baella opines that the plaintiff's benefit of the bargain can reasonably be ascertained because their agreement was sufficiently detailed and there is a reasonable factual basis for the figures underlying his financial

calculations (see Pl. Ex. B, p. 2). Specifically, Montas provided the financial projections, and Montas is an experienced entertainment event organizer who is familiar with revenue and expenses attendant to these types of concerts (see id., p. 1).

Furthermore, Dr. Baella's expert report is thorough. It contains two charts identifying for each concert venue (1) anticipated revenue and (2) anticipated expenses (Pl. Ex. B). The revenue chart outlines the anticipated revenue based on each venue's capacity and the average ticket sale prices for that venue (id., p. 2). Dr. Baella also included, based on Montas's experience, a two percent reduction to account for unsold and courtesy tickets. In sum, Baella calculated an expected tour revenue of $1,560.106.41 (id.).

The anticipated expenses chart outlines five categories of tour expenses that were identified by Montas: the venue cost, production and promotion costs, the artist cost, and miscellaneous expenses. Based on the sum of these numbers, Dr. Baella calculated anticipated expenses totaling $912,500.00 for the ten venues (Pl. Ex. A, ¶13). Dr. Baella then subtracted the expected expenses from the anticipated proceeds to form his opinion that the plaintiff's expected net profit totaled $647,606.41 (id., ¶¶20, 21).

I find Dr. Baella's expert report and testimony regarding the

plaintiff's damages (except for his pre-judgment interest calculation) persuasive.  Dr. Baella's report adequately details his methodology, and the financial projections underlying his opinion are from an experienced event coordinator that is familiar with revenue and expenses for such events. Importantly, those figures are undisputed.  Notably, eight of the ten tour venues were pre-selected so the figures underlying those financial projections undoubtedly have a substantial factual basis.  Revenue and expenses for the two unidentified venues are based on the average of the identified venues, which appears to be a reasonable method of calculating damages under the circumstances and, importantly, it is unchallenged.

In sum, the plaintiff has presented undisputed evidence showing to a reasonable certainty that she sustained damages of $647,606.41 due to the defendants' fraudulent conduct.

B.   Dr. Baella also opined that the plaintiff is entitled to $40,011.96 in pre-judgment interest from October 1, 2019 (the date after the tour was to be completed) to January 23, 2024 (Doc. 42, Pl. Ex. A).  This figure lacks a cognizable legal basis.

Dr. Baella's calculation is based on the 1-year Treasury Securities yearly interest rate that is referenced in 28 U.S.C. 1961 (Pl. Ex. A, ¶¶23-24).  Section 1961 governs post-judgment interest in federal cases.

16

"In federal diversity actions, pre-judgment interest is governed by state law." <u>Walker</u> v. <u>Life Ins. Co. of N. Am.</u>, 59 F.4th 1176, 1192 (11th Cir. 2023).

> …. [I]n tort actions [based on Florida law] plaintiffs are entitled to recover prejudgment interest "when a verdict liquidates damages on [their] out-of-pocket, pecuniary losses [.]" *Argonaut*, 474 So.2d at 215 (awarding prejudgment interest in subrogation action to recover monies paid for negligent property loss); *see also Amerace*, 823 So.2d at 113 (holding that, although "damages in personal injury cases are too speculative to liquidate before final judgment[,]" there is an exception to this rule "if the plaintiff can establish that he or she has suffered the loss of a vested property right.").

<u>Gilchrist Timber Co.</u> v. <u>ITT Rayonier, Inc.</u>, 472 F.3d 1329, 1331 (11th Cir. 2006).  Therefore, pre-judgment interest is awardable.

However, the basis for calculating pre-judgment interest under Florida law is identified in Fla. Stat. §55.03, and the plaintiff does not address her entitlement to pre-judgment interest based on benefit of the bargain damages.  See <u>Zokaites</u> v. <u>Balistreri Realty, Inc.</u>, No. 06-61244-CIV, 2007 WL 9700533 at *2 (S.D. Fla. Aug. 24, 2007), <u>aff'd</u>, 274 Fed. Appx. 786 (11th Cir. 2008) (The measure of damages is not necessarily the basis for determining prejudgment interest "because an award of prejudgment

interest is based on an entirely different legal concept.").[7]   Therefore, I recommend that the requested pre-judgment interest be rejected. Alternatively, the plaintiff may be given an opportunity to calculate properly the pre-judgment interest, although I note that she has already been afforded leave three times to address deficiencies in this motion.

C.   Finally, plaintiff's counsel states that she is entitled to benefit of the bargain damages under Florida's civil theft statute, §772.11(1) (Doc. 43-2).

Under Fla. Stat. §772.11, the defrauded party may seek "threefold the actual damages sustained." "Florida generally treats the term 'actual damages' as synonymous with 'compensatory damages.'" Grasso v. Grasso, No. 8:13-CV-3186-T-33AEP, 2015 WL 5159188 at *1 (M.D. Fla. Sept. 2, 2015).   The plaintiff's evidence shows actual damages of $223,517.97.

The plaintiff offers a string-cite of cases to support her contention that she is entitled to benefit of the bargain damages under this statute (Doc. 43-2, p. 4).   However, none of those cases refer to damages

---

[7] Furthermore, if pre-judgment interest is awardable on the benefit of her bargain, the plaintiff must affirm the date by which she would have received the entirety of her profits. See Barthco Int'l, Inc. v. DIJFO do Brasil, Ltda., No. 12-21221-CIV, 2013 WL 12183358 at *2 (S.D. Fla. Dec. 20, 2013) (Pre-judgment interest is calculated from the date of the loss.).

under the civil theft statute. Therefore, the plaintiff has failed to prove benefit of the bargain damages are available under this statute.

Furthermore, plaintiff's counsel affirmatively stated at the hearing that the plaintiff is not seeking a multiplier under this statute, nor do the damages calculations consider a multiplier. Therefore, an award under this statute, absent the multiplier, is substantially less than damages under her fraud claim. Of course, she is not entitled to duplicative damages. Consequently, I recommend that the damages award be based on the fraud claim.

For the foregoing reasons, the plaintiff has established the defendants are liable for fraud and civil theft, and I recommend that the Plaintiff's Amended Motion Requesting Default Judgment (Doc. 21) be granted in favor of the plaintiff and against the defendants for defrauding the plaintiff in the amount of $647,606.41.

Respectfully submitted,

Thomas G. Wilson
_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE
DATED: February 27, 2024.

## NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline

to file written objections.    28 U.S.C. 636(b)(1)(C).    Under 28 U.S.C. 636(b)(1), a party's failure to object to this report's proposed findings and recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions.